IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JARVIS PARKS,
    Petitioner,

vs.                                       Case No.: 4:05cv330/MMP/EMT

PAUL DECKER, Warden,
    Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1). Respondent filed an answer and relevant portions of the state court record (Docs. 20, 28). Petitioner filed a reply (Doc. 23).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.     BACKGROUND AND PROCEDURAL HISTORY

The procedural background of this case is undisputed by the parties. Petitioner was charged by information with armed robbery with a deadly weapon (Doc. 20, Ex. A at 16[1]). On April 2, 2004, Petitioner waived his right to a jury trial and entered a plea of nolo contendere to the lesser included offense of robbery (*id.*, Ex. A at 18–25; Doc. 28, Ex. E at 11–14). As a result of the plea, Petitioner

---

[1]Page numbers for Exhibits A, B, C, and D refer to the large bold numbers on the bottom of each page; page numbers for Exhibit E refer to the numbers on the upper right-hand corner of each page.

was convicted of robbery in the Circuit Court in and for Gadsen County, Florida, and sentenced to fifteen years in prison as a prison releasee reoffender, with no probation to follow (Doc. 20, Ex. A at 18–25; Doc. 28, Ex. E at 14). Petitioner did not directly appeal his judgment and sentence.

On July 22, 2004, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, asserting two claims of ineffective assistance of counsel (Doc. 20, Ex. A at 1–9). Petitioner filed a "Motion for Voluntary Dismissal of Pending Motion for Post-Conviction Relief" on February 3, 2005 (*id.*, Ex. A at 11–12). On February 9, 2005, the trial court denied Petitioner's Rule 3.850 motion on the merits (*id.*, Ex. A at 13–15). Petitioner's motion for rehearing was denied (*id.*, Ex. A at 39–42). Petitioner appealed to the First DCA, which affirmed per curiam without opinion on June 6, 2005, with the mandate issuing on July 5, 2005 (*id.*, Exs. B, C). Parks v. State, 903 So. 2d 941 (Fla. 1st DCA June 6, 2005) (Table).

Petitioner filed the instant habeas action on August 19, 2005 (*see* Doc. 1 at 1). Respondent concedes that the petition is timely and that Petitioner exhausted his state remedies (Doc. 20 at 5, 6).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States." As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19.

Section 2254 now provides:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
    (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>   (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test in habeas cases was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412–13; Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding.  See Wellington v. Moore, 314 F.3d 1256, 1260–61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343–45 (11th Cir. 2002).  First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication.  Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343.  Second, the court

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99, 120 S. Ct. at 1499–1503, 1511–16); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13, 120 S. Ct. at 1518–23).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

must determine whether the state court adjudication was contrary to the clearly established Supreme Court law.  Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344.  "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent."  Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S. Ct. 2310, 152 L. Ed. 2d 1065 (2002) (quoting Williams, 529 U.S. at 405)).  "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404–06).  If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority."  Fugate, 261 F.3d at 1216.  Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  *Id.* (citing and quoting Williams, 529 U.S. at 406).  A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 410.  The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'"  Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting Williams, 529 U.S. at 411).  Indeed, "[t]he gloss of clear error fails to give proper deference to state

courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003). A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that [the state court] judgment is infected by constitutional error." Williams, 529 U.S. at 389. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004) (citation omitted). Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent. Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n.4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence." § 2254(e)(1); *see* Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).") (dictum); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835–36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); *see also* Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations). Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence. *See* Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir. 2004) ("[Petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record.")).

Within this framework, the court will review Petitioner's claim.

III.     PETITIONER'S CLAIM

<u>Ground one: Petitioner was denied due process where counsel coerced and induced him to plea thereby rendering his plea constitutionally infirm</u>

(Doc. 1 at 4). Petitioner alleges that his trial counsel continuously pressured him and misrepresented that he would be found guilty if he went to trial (*id.*). Counsel advised him that the evidence was indisputable, which "removed any discretion [P]etitioner might have had" (*id.*). Additionally, Petitioner alleges that counsel told him that if he did not take the fifteen-year plea offer, he would be facing a mandatory life sentence (*id.* at continuation page 1). Just prior to the beginning of his trial, Petitioner stated that he wanted to reject the plea (*id.*). At that point, the court "gave Petitioner the anamnesis that a mandatory life sentence was apodictic," and while "counsel abortively endeavored to qualify this statement, such essay was nugatory" (*id.*). Therefore, Petitioner contends that he was "effectively coerced and induced by the aforementioned representations [and that] [s]uch representations were supererogatory and served only to deter Petitioner from exercising his right to a fair trial" (*id.*). Petitioner contends that a "factual inquiry is mandated" because the state court did not hold an evidentiary hearing on Petitioner's claim, and nothing in the record demonstrates the advice provided to Petitioner by his counsel (*id.*).

     1.     <u>Clearly Established Supreme Court Law</u>

When a petitioner challenges his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies. <u>Hill v. Lockhart</u>, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985). To obtain relief under <u>Strickland</u>, a petitioner must establish (1) that his counsel's representation "fell below an objective standard of reasonableness," and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 688, 104 S. Ct. at 2064, 2068. If a petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. <u>Strickland</u>, 466 U.S. at 697. Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1279 (11th Cir. 2003), *cert. denied*, 541 U.S. 1034, 124 S. Ct. 2104, 158 L. Ed. 2d 718 (2004); <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a

violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances." Strickland, 466 U.S. at 688. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court . . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

McMann v. Richardson, 397 U.S. 759, 769–70, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970).

To succeed on an ineffective assistance claim, Petitioner must rebut a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 690; *see also* Smith v. Singletary, 170 F.3d 1051, 1053 (11th Cir. 1999); Harich v. Dugger, 844 F.2d 1464, 1469 (11th Cir. 1988); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Indeed, Petitioner must demonstrate that counsel committed "serious derelictions" of his duty. Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991). "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial."

Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam). An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal proceedings and then to advise the client as to the merits of each. Stano, 921 F.2d at 1152 (citations omitted).

The second prong of the Strickland analysis requires Petitioner to show that he was prejudiced as a result of counsel's deficient performance. To satisfy this element, Petitioner must come forth with objective evidence showing that but for counsel's errors, he would not have accepted the plea offer and would have insisted on going to trial. *See* Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991); Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991). Conclusory, after-the-fact statements do not meet this requirement, nor is it sufficient to say that Petitioner would have received a less harsh sentence had he not accepted the plea offer. *See* United States v. Gordon, 156 F.3d 376, 380–81 (2d Cir. 1998); United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993); Diaz, 930 F.2d at 835; Toro, 940 F.2d at 1068; Key v. United States, 806 F.2d 133, 139 (7th Cir. 1987).

2. Federal Review of State Court Decision

Petitioner contends that he was denied effective assistance of counsel because counsel pressured him to enter a plea and misrepresented that he would be found guilty if he went to trial (Doc. 1 at 4). Petitioner raised this claim in his Rule 3.850 motion (Doc. 20, Ex. A at 4–5).

In its written decision denying Petitioner's claim, the state court made several factual findings. First, it found that Petitioner was charged by information with one count of armed robbery with a deadly weapon, a first degree felony punishable by up to life in prison (*id.*, Ex. A at 13). The State filed a notice of intent to seek an enhanced penalty pursuant to the Prison Releasee Reoffender Punishment Act (*id.*, Ex. A at 13). Next, the state court found that on April 2, 2004, after a jury had been selected but prior to its being sworn, Petitioner entered a negotiated plea to the lesser offense of robbery and was sentenced pursuant to the plea agreement to fifteen years in the Florida Department of Corrections (*id.*, Ex. A at 13). Finally, the state court found that Petitioner understood at the time he entered his plea that he would be sentenced to fifteen years in prison as a prison releasee reoffender, had sufficient time to consider the plea, and felt it was in his best interest to take the plea (*id.*, Ex. A at 14). Pursuant to the plea agreement, Petitioner's probation in

several other cases was terminated (*id.*, Ex. A at 14). Based on these factual findings, the state court concluded that Petitioner's claim was "totally without merit" (*id.*, Ex. A at 14).

Initially, this court defers to the state court's factual findings, as Petitioner has not shown by clear and convincing evidence that the findings were unreasonable. *See* 28 U.S.C. §§ 2254(d)(2), -(e)(1); Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) ("[Section] 2254(d)(2) allows for relief where the state court adjudication 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' § 2254(d)(2). Not only must the factual determination have been unreasonable, but the state court's factual findings must be shown unreasonable by clear and convincing evidence."). The remaining question is whether the trial court's denial of Petitioner's ineffective assistance of counsel claim was contrary to or resulted in an unreasonable application of Strickland. Although the state court denial of Petitioner's claim provides no guidance to this court in determining the legal standard it used in making its decision, this court must still defer to the state court decision unless review of the record shows that decision to be unreasonable. *See* Helton v. Secretary for Dept. of Corrections, 233 F.3d 1322, 1326–27 (11th Cir. 2000); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000); Hannon v. Cooper, 109 F.3d 330, 335 (7th Cir. 1997).

Petitioner was initially charged with armed robbery with a deadly weapon, which carried a sentence of life in prison if Petitioner were convicted (Doc. 20, Ex. A at 16; Doc. 28, Ex. E at 3). On April 2, 2004, just before Petitioner's trial began, his counsel, Armando Garcia, stated that Petitioner would enter a plea of no contest to the lesser included offense of robbery, with a sentence of fifteen years, pursuant to a negotiated plea agreement with the State (Doc. 20, Ex. A at 18; Doc. 28, Ex. E at 3, 4). In accordance with the plea, the State also agreed to drop charges in six other pending cases against Petitioner (Doc. 28, Ex. E at 3–4). Garcia presented the court with the written copy of the plea and an acknowledgment of rights form that both Petitioner and Garcia signed (*id.*, Ex. E at 4). The trial judge placed Petitioner under oath and questioned him about the signed plea form (*id.*, Ex. E at 5). Petitioner acknowledged that he could read, that he signed the plea form, and that he read the plea agreement and discussed it with Garcia before he signed it (*id.* Ex. E at 5). After the judge asked Petitioner if he had any questions, Petitioner asked about the sentence and then told the judge that he did not want to take the plea:

>THE COURT: Do you have any questions of me regarding any of the subjects covered in this form?
>
>THE DEFENDANT: I would like to know, will that sentence be mandatory?
>
>. . . .
>
>THE COURT: The legislature made it mandatory.
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: Anything else? Any other questions
>
>THE DEFENDANT: No, sir.
>
>THE COURT: Okay. Do you still want to do this?
>
>THE DEFENDANT: I didn't catch you something. I got to do the whole 15 years?
>
>THE COURT: That's what the Legislature says.
>
>MR. GARCIA: Give me a second, Judge.
>
>THE COURT: Sure.
>
>(Discussion between defendant and attorney.)
>
>THE DEFENDANT: Just run it, man. I ain't taking it. I ain't taking it. I thought he give me two years, two or three years. I ain't taking no 15. Run it. Tell them get the jury ready, man. Let's run it.
>
>THE COURT: The jury is ready.
>
>THE DEFENDANT: Let's run it.
>
>THE COURT: He's trading the potential 15 year mandatory for a life mandatory.
>
>MR. GARCIA: He's trading a mandatory 15 for a mandatory life, should he be convicted.
>
>THE COURT: Right. That's his choice.
>
>MR. GARCIA: Yes, sir, it's his choice.
>
>THE COURT: Now, once the jury is brought in, I assume the agreement is gone?
>
>MR. COMBS: Yes, sir

(*id.*, Ex. E at 6–7).

Before the jury was brought in, Garcia made a motion in limine, requesting the judge to order one of the witnesses not to refer to the robbery victim as "victim" (*id.*, Ex. E at 8). The judge denied

Garcia's request and ordered that the jury be brought in to begin the trial (*id.*, Ex. E at 10). After a conversation with his attorney, Petitioner announced that he did want to take the State's plea offer:

> THE COURT: Okay. Are we ready for the jury?
>
> MR. COMBS: Yes, sir.
>
> THE COURT: Bring them on. . . . .
>
> MR. GARCIA: Just a moment, Judge.
>
> (Discussion between defendant and attorney.)
>
> THE DEFENDANT: I'm gonna take the plea. I'm gonna take the plea for real. I'm gonna take the plea. I'll take the plea, sir. I'm gonna take the plea. Whatever it is, I'll take it.
>
> MR. COMBS: We need to make some decision here before we bring the jury in, Judge.
>
> THE DEFENDANT: I'm gonna take it. I'll take it. I'll take it. I'm gonna take it. I'm gonna take it.
>
> THE COURT: All right. They're holding up the jury.
>
> THE DEFENDANT: I'll take it.
>
> MR. GARCIA: If I can address the Court?
>
> THE DEFENDANT: I'm gonna take it.
>
> . . . .
>
> MR. GARCIA: If I may, Your Honor? As I announced earlier to the Court, Mr. Parks wanted to enter a plea and he expressed that to the Court and you did some preliminary plea colloquy. And when we got to the point where Mr. Parks was asked whether he understood or not that the 15 years was mandatory, he expressed some reluctance.
>
> I believe Mr. Parks has had a change of mind now and wants to go forward with the plea, with the understanding that he has to serve 15 years and that there is no probation to follow. I forgot to mention that last time, there is no paper to follow. And what he's doing, the terms of the agreement, is he's trading a mandatory -- a possibility of mandatory life for a mandatory 15. And I would ask the Court to --
>
> THE COURT: Plus getting rid of six other cases.
>
> MR. GARCIA: Plus getting rid of six other pending prosecutions that he could be convicted and sentenced to prison on those offenses as well. So I think Mr. Parks's decision is a wise one, and I would ask the Court to accept his plea. And I'm sure you'll have questions for Mr. Parks.
>
> THE COURT: May I have the plea form?
>
> MR. GARCIA: Yes, sir.

THE COURT: Mr. Parks, I previously swore you in, did I not?

THE DEFENDANT: Yes, sir.

THE COURT: And we started talking, and you said you had signed this plea form?

THE DEFENDANT: Yes, sir.

THE COURT: And then when we got to a certain state, you inquired of me as to whether or not the 15 years was mandatory, and I advised you it was, and you had some reluctance --

THE DEFENDANT: Yes, sir.

THE COURT: -- to go forward. And we have a jury here, and we are prepared to go forward with the trial, if that's what you want. And it's my understanding that you do want to go forward with the plea; is that correct?

THE DEFENDANT: Yes, sir. Yes, sir.

THE COURT: Now, this is not due to your counsel's urging; this is your choice?

THE DEFENDANT: Yes, sir.

THE COURT: You understand that by entering your -- Well, it's my understanding that it's your desire to enter a plea to the lesser included offense contained in the Information, of robbery; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: You understand that is a second degree felony and it is punishable by up to 15 years in prison?

THE DEFENDANT: Yes, sir.

THE COURT: And that pursuant to the agreement, you would be sentenced to 15 years as a prison releasee reoffender?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that by entering your plea, you're giving up your right to a trial and to have an attorney assist you in that trial?

THE DEFENDANT: Yes, sir.

THE COURT: Do you also understand that by entering your plea, you're giving up your right to call witnesses on your behalf, to confront witnesses against you, and to remain silent about this offense?

THE DEFENDANT: Yes, sir.

THE COURT: Has anyone promised you anything or threatened you in any manner to get you to enter this plea?

THE DEFENDANT: No, sir.

>THE COURT: And you've had sufficient time to think about this?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: And you feel it's in your best interest that you enter this plea?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: Do you now state under oath that you're entering your plea of no contest to one count of robbery and that you're doing so freely, knowingly, and voluntarily
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: Factual basis for the charge against Mr. Parks: I have reviewed the file and the affidavit contained therein and find there's a factual basis for the charge against him. I further find he entered his plea as to robbery freely, knowingly, and voluntarily, and I accept his plea. . . . .

(*id.*, Ex. E at 10–14).

The Supreme Court has determined that "the representations of the defendant . . . [at a plea proceeding] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73–74, 97 S. Ct. 1621, 1629, 52 L. Ed. 2d 136 (1977). Thus, Petitioner's statements under oath at his sentencing are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. *Id.*

Regarding the first prong of Strickland, Petitioner has failed to show that his counsel's performance was deficient. The record shows that Garcia investigated and evaluated Petitioner's options: Garcia informed Petitioner several times that he could either accept the State's offer of robbery and a sentence of fifteen years, or proceed to trial for armed robbery and face a life sentence. Additionally, Garcia advised Petitioner of the merits of both options: Petitioner admits that Garcia predicted how the evidence would be viewed by the jury and advised Petitioner to take the State's offer (*see* Doc. 1 at 4). Although Petitioner now asserts that Garcia performed deficiently by "coercing" him, the record indicates that Petitioner simply did not like either option presented by Garcia.

Moreover, even if Petitioner could show that his counsel's performance was deficient, he cannot show prejudice: there is no reasonable possibility that the result of the proceeding would have been different but for counsel's advice. Although Petitioner now contends that he entered the

plea only because he felt "coerced" by Garcia's advice, and by statements by Garcia and the judge that Petitioner would be facing a mandatory life sentence if he proceeded to trial, this assertion contradicts both the record and the state court's factual findings. Initially, Petitioner was indeed facing a mandatory life sentence because he was charged with a first degree felony punishable by life, and the state had filed a notice of intent to seek an enhanced penalty due to Petitioner's status as a prison releasee reoffender (s*ee* Doc. 20, Ex. A at 16–17; Fla. Stat. § 775.0829(9)). The fact that Petitioner was correctly informed of the penalty he faced by both his counsel and the trial court does not render his plea "coerced"; rather, it establishes that Petitioner understood the serious risk of proceeding to trial as charged instead of accepting the State's plea offer to a lesser offense. Additionally, Petitioner testified under oath during the plea colloquy that he understood the charge and sentence; that he was not entering the plea at his counsel's urging; that nobody had promised him anything or threatened him in any manner to get him to enter the plea; that he had sufficient time to think about his options; that he felt it was in his best interest to enter the plea; and that he was entering the plea freely, voluntarily, and knowingly. The state court found that Petitioner felt that entering a plea was in his best interest. Petitioner has not produced compelling evidence showing that his statements during his plea were untrue or clear and convincing evidence that the state court's finding was unreasonable. Additionally, Petitioner has not come forth with objective evidence showing that, but for counsel's performance, Petitioner would not have accepted the plea offer and would have insisted on going to trial. Petitioner's conclusory, after-the-fact statements do not meet this requirement.[3]

In light of the state court record and the Rule 3.850 court's factual findings, this court cannot conclude that the Rule 3.850 court's conclusion—that Petitioner's claim of ineffective assistance

---

[3]In his reply to Respondent's answer, Petitioner asserts, for the first time, that Garcia failed to investigate and discover a witness that would have testified that Petitioner did not commit the alleged charge but was only acquiring his own property, which the victim took "through a dice game which Petitioner discovered he was using loaded (crooked) dice" (Doc. 23 at 2). Petitioner states that the "plea colloquy is void of this information" (*id.*). This allegation is insufficient to satisfy <u>Strickland</u>. Petitioner has not shown a performance deficiency, because he does not allege that he told counsel about this witness or that counsel was or should have been aware of the witness. He simply alleges that counsel "failed to investigated [sic] and discover this witness" (Doc. 23 at 2). Next, Petitioner has not demonstrated prejudice because he has not alleged that counsel's advice would have changed had he discovered the witness. Further, presumably Petitioner knew of this allegedly exculpatory witness, but Petitioner voluntarily chose to accept the State's plea offer anyway, stating under oath that he knew he was giving up his right to call witnesses on his own behalf (*see* Doc. 28, Ex. E at 13).

of counsel was without merit—was contrary to or an unreasonable application of Supreme Court law.   Accordingly it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola this 12th day of December 2006.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**